IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| QUANZHOU MINGHOU TRADING CO. LTD., A CHINESE CORPORATION,<br><br>*Plaintiff*,<br><br>v.<br><br>THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",<br><br>*Defendants*. | Civil Action No. 1:23-cv-00026<br><br>Judge Hon. Manish S. Shah |

### MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO VACATE PRELIMINARY INJUNCTION ORDER

Defendants TIAMOU, Mosha Belle, Quinmok, AprilSpring, Just So So, WONESION, UMYOGO, and JSLEAP (collectively "Defendants") hereby respectfully request that the Preliminary Injunction Order ("PIO") (Dkt. No. 31) entered in this matter be vacated and state as follows:

### I. INTRODUCTION

The Court's PIO in this case should be vacated. As an initial matter, Plaintiff Quanzhou Minghou Trading Co. Ltd. ("Plaintiff") already admits that it does not practice U.S. Design Patent No. D912,376 (the "'376 Patent" or "Patent-in-suit"). The sole purpose that it obtained the '376 Patent is to "financially exploits" the designs included therein. In other words, Plaintiff obtained the Patent-in-suit solely to extract license fees from potential infringers as detailed in its declaration supporting the motion for entry of a TRO. The Supreme Court in *eBay, Inc. v. Mercexchange, LLC*, 547 U.S. 388, 396-97 (2006) expressly states that an injunction may not serve the public interest where "firms use patents not as a basis for producing and selling goods

but, instead, primarily for obtaining licensing fees." While Plaintiff vaguely claims it is in the business of selling consumer products including footwears, it does not claim direct competition with Defendants in the field of the accused athletic shoes. As a non-practicing entity who does not directly compete with Defendants, Plaintiff is prohibited from obtaining a PIO as an injunction disserves the public interest and legal damages is sufficient to compensate for the infringement, if any.

Furthermore, Plaintiff cannot meet the heavy burden required for entry of a preliminary injunction as it cannot show a likelihood of success on the merits. Products with the exact same shoe sole as the accused products had been on sale prior to the filing date of the patent-in-suit. As such, the accused products either do not infringe, or they are invalidating prior art to the patent-in-suit. Plaintiff filed this case against Defendants and at least 70 unrelated online stores, asserting a claim of patent infringement of the '376 Patent, which was filed on July 18, 2019, and issued on March 9, 2021. However, products with the exact same sole design have been sold to the public in various colors and sizes for men and women since at least as early as April 24 of 2019, before the filing date of the '376 Patent. Plaintiff's pleadings and motions for temporary restraining order and preliminary injunctions offer no evidence to counter the fact that the accused shoe sole design predates the filing date of the '376 Patent. The '376 Patent is either invalid or the accused products do not infringe. Plaintiff cannot demonstrate a likelihood of success on the merits of its infringement claim.

The Temporary Restraining Order ("TRO") and PIO in this case were also entered without a sufficient showing of irreparable harm. As a non-practicing entity whose goal is to extract license fees from potential infringers, it is disingenuous for Plaintiff to claim that "sale of the Infringing Products is also likely to cause consumer confusion with genuine MINGHOU footwear products

and harm Plaintiff's reputation and loss of customers' goodwill." It makes no sense as Plaintiff simply does not make "genuine" products embodying the '375 Patent. For this reason alone, the PIO should be vacated.

In addition, the balance of hardship weighs heavily against maintaining the PIO. As shown below, Defendants will suffer greater harm if the PIO is maintained while Plaintiff as a non-practicing entity suffers none if it is vacated.

In the alternative, if the PIO were to remain in effect, it should be modified so that the bond is increased to at least $5 million. Plaintiff was ordered to submit a bond of $80,000. However, given the high costs and damages to Defendants that could result from the injunction, this amount should be dramatically increased.

## II.     ARGUMENTS AND AUTHORITIES

### A. Legal Standard

"A preliminary injunction is an extraordinary remedy." *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1044 (7th Cir. 2017). *See also Orr v. Shicker*, 953 F.3d 490, 501 (7th Cir. 2020). To prevail on a temporary restraining order or preliminary injunction, a plaintiff must show: "(1) a likelihood that it will prevail on the merits of the lawsuit, (2) that it will suffer irreparable harm without injunctive relief, and (3) that there is no adequate remedy at law." *Deckers Outdoor Corp. v. P'ships & Unincorporated Ass'n*, No. 13 C 2167, 2013 U.S. Dist. LEXIS 47248, at *4 (N.D. Ill. Mar. 27, 2013) (*citing Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1011 (7th Cir. 2005)). If the moving party fails to demonstrate "any one of the[] three threshold requirements, [the court] must deny the injunction." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of Am. Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008). "If these requirements are met, the court must then balance the degree of irreparable harm to the plaintiff

against the harm that the defendant will suffer if the injunction is granted." *Deckers*, 2013 U.S. Dist. LEXIS 47248 at *4 (*citing Incredible* Techs., 400 F.3d at 1011)); *see also Boucher v. Sch. Bd. of the Sch. Dist. of Greenfield*, 134 F.3d 821, 824 (7th Cir. 1998). "The court must apply a sliding scale approach in determining whether to issue a temporary restraining order - the more likely the plaintiff will succeed on the merits, the less the balance of irreparable harms needs to be to favor the plaintiff's position." *Deckers*, 2013 U.S. Dist. LEXIS 47248 at *4 (*citing TY, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001)). "Lastly, the court must consider the public interest (non-parties) in denying or granting the injunction." *Deckers*, 2013 U.S. Dist. LEXIS 47248 at *4.

In patent cases, granting or denying an injunction under 35 U.S.C. § 283 is within the district court's sound discretion. *See Abbott Labs. v. Andrx Pharm., Inc.*, 452 F.3d 1331, 1334 (Fed. Cir. 2006) (citing *Amazon.com, Inc. v. Barnesandnoble.com*, 239 F.3d 1343, 1350 (Fed. Cir. 2001)). The issuance of a preliminary injunction order is "a drastic and extraordinary remedy that is not to be routinely granted." *Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993).

Demonstrating a likelihood of success in a case alleging infringement of a patent, a plaintiff must show that (1) the defendant infringes the patent and (2) that patent likely to be found valid. *Genentech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1364 (Fed. Cir. 1997) ("In order to demonstrate that it has a likelihood of success, Genentech must show that. . . (1) it will likely prove that Novo infringes the '199 patent and (2) its infringement claim will likely withstand Novo's challenges to the validity and enforceability of the '199 patent."). If the defendant "raises a 'substantial question' concerning validity, enforceability, or infringement . . . the preliminary

4

injunction should not issue." *Id.* It is axiomatic that that which comes before the patent either does not infringe or is invalidating prior art. *See* 35 U.S.C. § 102.

Irreparable harm is harm that no monetary damages, however great, could address. Price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm. *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012). However, there must be "a nexus between the asserted infringement and the market injury. . . ." *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 678 F.3d 1314, 1324 (Fed. Cir. 2012). A "mere showing" that a party "might lose some insubstantial market share as a result of [the] infringement is not enough." *Id*. at 1324-25. "Irreparable harm lies only where injury cannot be undone by monetary damages." *Paice LLC v. Toyota Motor Corp.*, No. 2:04-CV-211-DF, 2006 WL 2385139, at *5 (E.D. Tex. Aug. 16, 2006). Furthermore, irreparable injury cannot be established by potential lost sales alone. *See Abbott Labs.*, 452 F.3d at 1335. Instead, a party "seeking injunctive relief must make 'a clear showing' that it is at risk of irreparable harm, which entails showing 'a likelihood of substantial and immediate irreparable injury.'" *Id*. at 1325 (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). "[C]ourts routinely refuse to award injunctive relief where the patentee's 'motivation in seeking an injunction is less about preventing irreparable harm and more about extracting . . . leverage in negotiating with [the defendant].'" *Wis. Alumni Research Found. v. Apple, Inc.*, 261 F. Supp. 3d 900, 919-20 (W.D. Wis. 2017) (reversed on other grounds) (citing *Hynix Semiconductor Inc. v. Rambus Inc.*, 609 F. Supp. 2d 951, 983 n.29 (N.D. Cal. 2009)).

### B. Established Legal Precedents Bars Plaintiff from Obtaining a PIO for Public Interest

As Justice Kennedy explained in *eBay*, while the patentee is a non-practicing entity, an injunction may not serve public interest:

> An industry has developed in which firms use patents not as a basis for producing and selling goods but, instead, primarily for obtaining licensing fees. For these firms, an injunction, and the potentially serious sanctions arising from its violation, can be employed as a bargaining tool to charge exorbitant fees to companies that seek to buy licenses to practice the patent. When the patented invention is but a small component of the product the companies seek to produce and the threat of an injunction is employed simply for undue leverage in negotiations, legal damages may well be sufficient to compensate for the infringement and an injunction may not serve the public interest.

547 U.S. at 396-97. Where the patentee is an entity that uses patents primarily to obtain licensing fees, its business objectives are premised on monetary relief being sufficient to compensate for infringement. *Apple Inc. v. Samsung Electronics Co., Ltd.*, 809 F. 3d 633, 650 (Fed. Cir. 2015); *see also Wis. Alumni*, 261 F. Supp. 3d at 919-20.

Here Plaintiff already admits that it does not practice the '376 Patent and the reason to obtain the patent is to "financially exploits" the designs there. Declaration of Chunlan Wu ("Wu Decl."), Dkt. No. 6-4 at ¶ 6. Instead of making its own products bearing the design in the '376 Patent, all Plaintiff did was to investigate and take potential infringers to court in order to obtain monetary damages. *Id*. at ¶¶ 8-17. While Plaintiff vaguely claims that it is in the business of selling consumer products, including footwear products, it never claims direct competition with Defendants in the field of the accused athletic shoes. *See generally* Wu Decl.

Plaintiff fits squarely into the profile where an injunction should be barred by the numerous precedents from the Supreme Court and other courts as a PIO would hurt instead serve the public interest and legal damages are sufficient to compensate for the infringement, if any.

As detailed further below, the public interest would not be served because the Plaintiff has fallen so far short of showing both irreparable harm and a likelihood of success. Setting such a low bar for maintaining a preliminary injunction is certainly not in the public interest.

### C. Plaintiff Cannot Show a Likelihood of Success on the Merits

This Court must vacate the preliminary injunction entered in this matter as Plaintiff has asserted a claim of patent infringement against Defendants' products, *which bears a sole design that predates the patent*. Plaintiff has accused all defendants of selling different products with essentially the same shoe sole design, which Plaintiff has accused of infringing the '376 Patent. Complaint (Dkt. No. 1) at 10-16. An example of the accused products is reproduced below. *Id*. at 13.



However, shown below is a copy of co-defendant SKDOIUL's Amazon.com store page for the same product identified in Plaintiff's complaint. Declaration of Xinfa You ("You Decl.") at ¶ 6, attached hereto as Exhibit A. The same accused SKDOIUL product was first available on Amazon.com since at least June 25, 2023, before the July 18, 2019 filing date of the asserted '376 Patent.

7



You Decl. at Ex. A-2. Products with the exact same sole design have been sold to the public in various colors and sizes for men and women since at least as early as April 24 of 2019. *See* Ex A-1 through A-6 to You Decl. Given that the very product designs which Plaintiff accuses of infringing the '376 Patent were publicly offered for sale prior to the July 18, 2019, filing date of the '376 Patent, they cannot infringe the '376 Patent and are anticipatory prior art under 35 U.S.C. § 102. *Lautzenhiser Techs., Inc. v. Sunrise Med. HHG, Inc.*, No. 4:07-CV-0084-TWP-WGH, 2010 U.S. Dist. LEXIS 119738, at *9 (S.D. Ind. Nov. 8, 2010) ("In other words, because a valid patent cannot cover prior art, Defendants cannot infringe on the '624 patent because they employ the very prior art that the '624 patent expressly disclaimed."). Either way, Plaintiff cannot meet its burden

of showing a strong likelihood of success on the merits, since the accused product designs either do not infringe the '376 Patent or they are anticipatory prior art.

### D. Plaintiff Cannot Demonstrate That It Will Suffer an Irreparable Harm

For the same reasons, Plaintiff cannot make a showing of irreparable harm, since its patent is either not infringed by Defendant's products—which again, predate the asserted patent—or it is invalid. Indeed, Plaintiff cannot make a showing of any harm in such circumstances.

As detailed above, Plaintiff cannot prove irreparable harm as a non-practicing entity who does not directly compete with Defendants in the field of the accused athletic shoes. As Plaintiff's goal is to extract license fees from potential infringers, it is disingenuous for Plaintiff to claim that "sale of the Infringing Products is also likely to cause consumer confusion with genuine MINGHOU footwear products and harm Plaintiff's reputation and loss of customers' goodwill." Memorandum in Support of Plaintiff's Ex Parte Motion for Entry of Temporary Restraining Order, Dkt. No. 6 at 10.

While it is possible for a non-practicing entity to claim irreparable harm if its products indirectly compete with Defendants, that is not the case here. *Trebro Mfg., Inc. v. Firefly Equipment, LLC*, 748 F. 3d 1159, 1171 (Fed. Cir. 2014); *Wis. Alumni*, 261 F. Supp. 3d at 919-20; *Hynix Semiconductor*, 609 F. Supp. 2d at 983. Plaintiff never claimed or named a single product that it indirectly competes with Defendants. *See generally* Wu Decl. Dkt. No. 6-4. Plaintiff provided nothing more than boiler-plate statements related to irreparable harm merely alluding to a likelihood of harm that does not exist. *See generally* Memorandum in Support of Plaintiff's Ex Parte Motion for Entry of Temporary Restraining Order, Dkt. No. 6 at 7-10. Plaintiff's unsupported, speculative, and self-serving arguments fall far short of demonstrating irreparable harm as required by *eBay*. Given that there are at least 80 defendants in this lawsuit, Plaintiff has

failed to even show a single lost sale let alone meet the standard for proving irreparable harm. Accordingly, the PIO should be vacated because Plaintiff has failed to show irreparable harm.

### E. The Balance of Hardships Weighs in Favor of Dissolving the PIO

The grant of a preliminary injunction in a patent case often results in the defendant having to remove a product from the market, or at least drastically modify it, pending trial. Furthermore, given the extended duration of many patent cases, the defendant may face months or even years before the product can be reintroduced. As a result, the hardship on the defendant can be drastic. In *Illinois Tool Works v. Grip-Pak, Inc.*, 906 F.2d 679 (Fed. Cir. 1990), the Federal Circuit considered opposing hardships and explained:

> The hardship on a preliminarily enjoined manufacturer who must withdraw its product from the market before trial can be devastating. On the other hand, the hardship on a patentee denied an injunction after showing a strong likelihood of success on validity and infringement consists in a frequently and equally serious delay in the exercise of his limited-in-time property right to exclude. Neither hardship can be controlling in all cases. Because the court must balance the hardships, at least in part in light of its estimate of what is likely to happen at trial, it must consider the movant's showing of likelihood of success. Yet, a court must remain free to deny a preliminary injunction, whatever be the showing of likelihood of success, when equity in the light of all the factors so requires.

*Illinois Tool*, 906 F.2d at 683. Courts facing the prospect of such dire consequences to one party or the other therefore must engage in a sensitive analysis based on the unique facts of each case. The relative strength of the parties' showings on the merits influences the outcome. Where the patent holder's evidence is especially weak—as is the case here—the showing on balance of hardships and/or public interest must be more compelling. *Id*.

Considering all of the facts in this case, it is clear that Plaintiff does not urgently need injunctive relief to protect it from harm. To the contrary, more sales of the accused infringing products may generate more license fees to Plaintiff. *See Hynix Semiconductor*, 609 F. Supp. 2d at 983, n.29. On the other hand, if an injunction is maintained against Defendants, they will be

10

excluded from this competition and will lose a significant portion of their revenue. You Decl. at ¶ 9 (stating that Defendants have suffered about $2 million in lost revenue due to the injunction). Therefore, the balance of harms strongly weighs in favor of dissolving the PIO.

### F. Alternatively, The PIO Is Not Supported by a Sufficient Bond

Although Defendants strenuously maintain that the PIO should be vacated, if the Court disagrees, they submit that it should be modified to require a sufficient bond. Before a court may issue a preliminary injunction, Federal Rule of Civil Procedure 65(c) requires that the "movant give security in an amount that the court considers proper to pay the costs and damages sustained by any party . . . wrongfully enjoined." Fed. R. Civ. P. 65(c). Courts have wide discretion under Rule 65(c) when determining the amount of the security. *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 136 (2d Cir. 1997). When setting the amount of the security, "courts should err on the high side." *Mead Johnson & Co. v. Abbott Labs.*, 201 F.3d 883, 888 (7th Cir.) opinion amended on denial of reh'g, 209 F.3d 1032 (7th Cir. 2000). This is simply because "an error in the other direction produces irreparable injury, because the damages for an erroneous preliminary injunction cannot exceed the amount of the bond." *Id*. Courts generally consider all evidence in determining the proper amount for a bond, including "potential lost profits, lost market share and associated costs of relaunch." *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1385 (Fed. Cir. 2006).

In this case, an appropriate bond would be in the amount of at least $5 million. For example, Defendant store TIAMOU alone generated more than $1.5 million in revenue between 2021 and 2022. You Decl., Exhibit A at ¶ 4. As a result of the PIO, Defendants have collectively lost an estimated $2 million in revenue. *Id*. at ¶ 9. As such—assuming two years of litigation—Defendants stand to lose a multiple of $2 million in revenue as a result of the injunction. Also, if the injunction were to remain in place, the loss of market share is estimated to be significant. As

11

such, Plaintiff should be required to post a significant bond—at least in the amount of $5 million—if the PIO is not vacated.

### III. CONCLUSION

This Court must vacate the preliminary injunction in this matter as a non-practicing entity like Plaintiff is barred from a PIO by established legal precedents as it disserves the public interest. Plaintiff cannot show a likelihood of success on the merits because Plaintiff has in fact, accused the prior art of infringement, meaning either the accused products cannot infringe, or the asserted patent is invalid. It will suffer no harm as a non-practicing entity whose goal is to extract damages from Defendants. Further, the balance of hardship weighs strongly against maintaining an injunction. As such, this Motion should be granted, and the PIO should be vacated. In the alternative, the Court should modify the order and require Plaintiff to post a significant bond—at least in the amount of $5 million—if the PIO is not vacated.

DATED: February 19, 2023

Respectfully submitted,

By: */s/ Timothy T. Wang*
Timothy T. Wang
Texas Bar No. 24067927
twang@nilawfirm.com

**NI, WANG & MASSAND, PLLC**
8140 Walnut Hill Ln., Ste. 500
Dallas, TX 75231
Tel: (972) 331-4600
Fax: (972) 314-0900

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

       I hereby certify that on the 19th day of February, 2023, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Illinois, Eastern Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

                                       */s/ Timothy T. Wang*
                                       Timothy T. Wang