**1**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

QUANZHOU MINGHOU TRADING CO., LTD.,)
a Chinese corporation,             )
                                   )
                Plaintiff,         )
                                   )
        vs.                        )   No. 23 C 26
                                   )
THE PARTNERSHIPS AND UNINCORPORATED)
ASSOCIATIONS IDENTIFIED ON         )
SCHEDULE A, et al.,                )   Chicago, Illinois
                                   )   February 23, 2023
                Defendants.        )   9:57 o'clock a.m.

TRANSCRIPT OF PROCEEDINGS -
Motion Hearing
BEFORE THE HONORABLE MANISH S. SHAH

APPEARANCES:

For the Plaintiff:        BAYRAMOGLU LAW OFFICES, L.L.C.
                          BY:  MR. NIHAT DENIZ BAYRAMOGLU
                               MR. GOKALP BAYRAMOGLU
                          1540 West Warm Springs Road, Suite 110
                          Henderson, Nevada  89014
                          (702) 462-5973

For Defendant Tiamou      NI, WANG & MASSAND
and other Defendants:     BY:  MR. TIMOTHY T. WANG
                          8140 Walnut Hill Lane, Suite 500
                          Dallas, Texas  75231
                          (972) 331-4603

COLLEEN M. CONWAY, CSR, RMR, CRR
Official Court Reporter
219 South Dearborn Street, Room 1918
Chicago, Illinois  60604
(312) 435-5594
*colleen_conway@ilnd.uscourts.gov*

1      (Proceedings heard in open court:)

2          THE CLERK:  23 C 26, Quanzhou Minghou versus The

3   Partnerships.

4          THE COURT:  Good morning.  Counsel for the plaintiff?

5          MR. N. BAYRAMOGLU:  Good morning, Your Honor.  This

6   is Nihat Deniz Bayramoglu on behalf of the plaintiffs.

7          And I have with me --

8          MR. G. BAYRAMOGLU:  Good morning, Your Honor.  This

9   is Gokalp Bayramoglu.

10         THE COURT:  Good morning.  You may have a seat.

11         Counsel for the defense?

12         MR. WANG:  Good morning, Your Honor.  Timothy Wang

13  representing Defendants Tiamou and several other defendants.  I

14  will not bother you with all the names.

15         THE COURT:  That's fine.  And you may have a seat.

16         MR. WANG:  Thank you.

17         THE COURT:  And, counsel, you may remain seated.

18  Just be sure to speak into the microphones so that the court

19  reporter can pick you up.

20         So I have the motion to vacate the preliminary

21  injunction.  What's the plaintiff's response?

22         MR. N. BAYRAMOGLU:  We think in -- just -- I guess,

23  as a preliminary matter, before we get specifically into the

24  motion to vacate, we wanted to bring to the Court's attention

25  that, just up until a few days ago, the defendants were

1    continuing -- they were -- in fact, these defendants were the

2    only defendants that were continuing to try to circumvent the

3    preliminary injunction order.  They were seeking out new ASINs

4    to try and get around the Amazon restrictions that were on

5    their account.

6          Now, to their credit, since we brought that to their

7    attention, about two days ago, they have removed all listings

8    that appear to be new.  But it looks like, based on

9    conversations that we've had -- and we're still investigating

10   this, because we learned this a few hours ago -- that the

11   defendants are now moving towards liquidating all of their

12   inventory at Amazon and listing the sales as "used" and

13   offering them at about a 65 to 70 percent discount.

14         So it's just concerning because -- I mean, we saw,

15   with this motion to vacate, a couple of procedural missteps

16   that seem to be a habit for the defendants.  So we're worried

17   about what's going to happen if there's any modification of the

18   preliminary injunction order.

19         THE COURT:  Well, let me interrupt just to ask, when

20   you're talking about defendants changing the items that they're

21   selling or moving to different Amazon accounts, are you

22   limiting your focus to just products that you're accusing of

23   infringing?

24         Because I did not intend my injunction to stop the

25   defendants from operating online platforms generally and

1    selling anything else that they want to sell.

2         MR. N. BAYRAMOGLU:  That's correct, Your Honor.  I'm

3    limiting it only to these shoes that are the accused products.

4         So what they did was Amazon went and shut down the

5    old ASINs; and then the day after or two days after the old

6    ASINs were shut down, they created new ASINs, which is the

7    Amazon internal identifier, to the same URL.  So it was exactly

8    the same product that was now being sold under a new ASIN.

9         THE COURT:  Understood.  Okay.  Thank you.

10        MR. N. BAYRAMOGLU:  Now, just procedurally speaking,

11   and how the motion to vacate was brought, I mean, we were never

12   -- the defendants failed to reach out to us and communicate

13   with us to at least meet and confer.  We think there's some

14   substantive issues that we could have resolved.  I'll talk a

15   little bit about those a bit later.

16        But that's one issue.  And then, secondarily -- and I

17   don't mind coming to Chicago on short notice, I love the city,

18   but I do know that the chamber rules require three business

19   days' notice, and with Presidents' Day being a holiday and the

20   motion being noted on a Sunday, we're only on -- well, I guess

21   this would be the third business day.

22        But the procedural issues aside, I think

23   substantively there's quite a bit lacking in the motion to

24   vacate.  They're looking to set aside the preliminary

25   injunction, so we kind of go back to the four-prong test.

1    But the thrust of the motion to vacate seems to be

2    along three points.  It's first that the plaintiff is a

3    non-practicing entity or that they don't compete.

4    This is demonstrably false.  The defendants might not

5    have known it when they submitted their -- the motion to

6    vacate, but we have shared that information.  We requested and

7    had a conversation with opposing counsel on Tuesday, and we've

8    since shared some of that information.

9    The second point is that they talk about being --

10   THE COURT:  So you are a practicing entity?

11   MR. N. BAYRAMOGLU:  We are.  We have listings, in

12   fact, on Amazon.  And that listing has been active since, at

13   least, June of 2021, either June or July.

14   In any event, it's summer 2021.  So it's been over a

15   year and a half that that listing has been active.

16   THE COURT:  And then with respect to prior art?

17   MR. N. BAYRAMOGLU:  Now, with the invalidity and the

18   non-infringement issue, we note that there's not even any

19   proper analysis that's been done.  There's no analysis for

20   infringement under *Egyptian Goddess*.  There's no invalidity

21   design analysis that's done under the *High Point* analysis.

22   It's just devoid.

23   Essentially, the defendants' position seems to be:

24   We sold it first before your priority date, and, therefore,

25   your patent -- our products are either non-infringing or your

1     patent isn't valid.

2            But this kind of leaves out another issue that we've

3     also shared with opposing counsel after the motion to vacate

4     was filed, was that we have a public disclosure from March 16th

5     of 2019, which is prior to any of the products that have been

6     shared in the motion to vacate.

7            That publication would fall squarely under the

8     exception of 35 U.S.C. 102(b)(1)(B) because they're within 12

9     months of the priority date.

10           We also have a publication of a video showing the

11    shoe design.  I believe that's December 18th of 2018.

12           So we know that any prior art that's going to be

13    provided for invalidation purposes are going to have to be at

14    least before that date.  We don't see anything to that extent

15    in the motion to vacate.

16           There's also potential -- we're investigating, we're

17    still not sure, but it looks like there may be something even

18    as early as late August or early September of 2018 as far as a

19    public disclosure that would fall under this exception.  But

20    we're still investigating that, in sufficient --

21           THE COURT:  Wouldn't you know the answer to that?

22    Why do you need to investigate that?

23           MR. N. BAYRAMOGLU:  It's a bit complicated because of

24    the chain of title of the patent.

25           The original inventor of the patent is not the

1    current owner of the patent.  It's changed hands a few times.

2    So we are trying to get in touch with the inventor himself, but

3    it's a little bit tricky because Chinese folks and Chinese

4    witnesses are usually reluctant to get involved in U.S.

5    litigation matters.

6            THE COURT:  And one -- well, one of the reasons I

7    suppose that the defendants initially thought that you might be

8    a non-practicing entity is related to that, that this patent

9    seems to have maybe changed hands a few times.

10           It may be a little unclear whether this is the kind

11   of case that maybe money damages can sort all of this out at

12   the end of the day, especially if we're just talking about what

13   the valuable licensing fee might be.  And we can always figure

14   out after the fact what were the sales of any infringing

15   product and then we can compensate plaintiff accordingly.  And

16   that may be an issue as to why a preliminary injunction may be

17   inappropriate in this case, which, I think, is a brief summary

18   of one of the defendants' points.

19           MR. N. BAYRAMOGLU:  Absolutely.  But, I mean, I would

20   agree with that.  That is a factor that goes into the analysis.

21           And we don't fault the defendants for putting forth

22   or submitting information to the Court that they didn't know or

23   that they weren't sure about.  Of course, any defendant's going

24   to put forth every argument that they can.  It's just that in

25   this particular instance, it's just we can now show -- and it's

1   now -- of course, if we get into briefing, we can provide that

2   so that that is shown.

3          Now, I know that the third issue, then, that's in the

4   motion to vacate is the bond itself.  And they're asking for an

5   increase in the bond.

6          But it's a little bit troubling to us, and we would

7   like to investigate that further because -- I believe it's page

8   11 of the motion to vacate itself.  There's about a paragraph

9   of attorney argument saying that it's roughly $2 million per

10  year, or something along those lines, that's going to be caused

11  over the course of a two-year litigation, if it goes what a

12  normal case would.  But I believe it's paragraph 9 of the

13  declaration says that they've already lost $2 million.

14         So any way we slice this, we're looking at a

15  defendant that's doing pretty substantial and sizable sales.

16  This isn't -- I mean, I know with these types of cases,

17  sometimes you'll have onesies and twosies where defendants come

18  and they've sold one product or ten products or a hundred

19  products.  We are orders of magnitude beyond that in this

20  particular case.

21         THE COURT:  Well, let me shift to the defendants,

22  because this does relate to a question I had for the

23  defendants, which is:  That revenue number, is that revenue of

24  just the sales of these shoes?  Or is it all the products that

25  these entities sell?

1    MR. WANG:  Yes, Your Honor.  Actually, the revenue

2    loss is coming from all the shoes that was accused of

3    infringing, and because that's still a store that I represent

4    right now.  And one of the store -- at least one of the store,

5    he sold -- I think he sold $1.5 million in last year alone.

6        So approximately -- all the stores together, we are

7    looking at a very significant amount of sales.

8        THE COURT:  Of these accused designs?

9        MR. WANG:  That's correct, Your Honor.

10        THE COURT:  In light of what the plaintiffs are

11    saying today, I guess I would be inclined to take a couple of

12    briefs on the motion to vacate -- give the plaintiffs an

13    opportunity to put some of this in writing and give the defense

14    a chance to submit something in reply -- understanding that in

15    the interim, the preliminary injunction will remain in place,

16    but I will move as quickly as possible if I think the

17    injunction is inappropriate or should be narrowed after I hear

18    a little bit more.

19        That's my thought.  Unless you have something you can

20    say in reply that will carry the day for you.

21        MR. WANG:  Yes, I do.  I do want to respond to the

22    points that plaintiff counsel has raised.

23        First of all, as they admitted, none of the

24    information they presented today was in any of the briefings or

25    pleadings before, you know, we filed the motion to vacate.

1        And plaintiff counsel sent us some additional

2   evidence last night at 11:00 p.m.  I actually looked at it.

3   One thing that is very particular interest, that they send us

4   three links, Amazon links, supposed to be plaintiff selling

5   those shoes, practicing the patent, right?  You know what time

6   is it?  2021, June 2021.

7        But you know what?  If you look at USPTO assignment

8   records, the plaintiff did not own the patent until right

9   before the lawsuit.  So what does that mean?

10        And remember, it's the plaintiff's own declaration

11   saying that, you know, the patent was never licensed before.

12        So I really question that, the assertion that the

13   plaintiff is a practicing entity with regard to this patent,

14   because they were not even owner and the patent was never

15   licensed.  That's one thing.

16        Second thing is about the prior art.  I do see the

17   prior publication allegedly before -- I think it's March 2019,

18   before our earliest, you know, evidence showing that the design

19   was in the market, right?

20        But it's some -- coming from some kind of website.  I

21   could not even tell the URL.  It's some kind of Chinese

22   commerce website, maybe.  It just say it was first online 2019,

23   on March 16, 2019, and there was no -- there was zero sales of

24   their products.

25        One thing we all know, that if you work in the

1   e-commerce, is that all these online listings, they are all

2   editable, you can change it, if you are the owner of the

3   listing.

4         So anyway, what I'm trying to say is that, you know,

5   the -- first of all, plaintiff never present those evidence

6   before, for the motion for TRO, motion for PI.  Okay?

7         Second thing is even evidence that's been presented

8   today is still questionable, at best.  And it's causing

9   significant damage to our clients' business.  And we believe

10   the TRO should not be in place in the first place.

11         THE COURT:  Well, the fact they didn't present some

12   of this at the time of the TRO or the preliminary injunction,

13   in some ways, may be forgivable in the sense of I was satisfied

14   at the time that what they did present was enough to

15   generate -- to warrant a TRO and then a preliminary injunction;

16   but it may be that, as sometimes happens, through discovery or

17   other investigation, once we have the adversarial process

18   engaged, it may be that I missed something that didn't get

19   presented, and there are details that ought to be raised that

20   might question whether a preliminary injunction is appropriate

21   going forward.

22         Often what happens is that the parties need to engage

23   in some discovery and then we can have a better record and more

24   complete record, understanding that a preliminary injunction is

25   extraordinary and it ought to really be justified, especially

1   if it's causing harm that can be compensated at the end of the

2   day through money damages.

3           But from what the parties are saying today, it does

4   seem like there are facts that matter and facts that need to be

5   drilled down in a way where plaintiffs are coming forward with

6   some facts and then the defendants are saying:  Well, we might

7   take a look at that and think it's not really all that

8   probative of exactly what the plaintiff is saying, because you

9   didn't own the patent back then.  Maybe the dates you've got

10  aren't real dates because somebody changed them later, those

11  kinds of things.  But I think both sides need to investigate

12  that a little bit more and present them a little bit more

13  formally.

14          Since you are now engaged in the case and with each

15  other, understanding that sometimes obtaining the kind of

16  information you want may be difficult, especially with the

17  formalities that might be involved in obtaining evidence

18  overseas and the like, hopefully you'll be able to find ways to

19  work through that and get things in a format that both sides

20  can live with for purposes of these early rounds of litigation.

21          But I do think it's appropriate and necessary for me

22  to revisit the propriety of this injunction.  I guess I am

23  expressing to you, I am a little worried that this injunction

24  might not be necessary if we're just talking about sales of

25  products that we can recreate after the fact and find the

1    appropriate fee for, if they do turn out to be infringing.

2           And so I wonder -- so all of that is to say, you

3    should talk to each other.  Maybe you'll arrive at some

4    agreement that the preliminary injunction can be modified to

5    allow the sales to go forward, subject to accounting.  And if

6    that accounting is in place, then as long as you know what they

7    were selling, maybe you're not so worried about it.

8           So, I mean, I realize you're worried about the price

9    point and all of that, and the devaluing of the product -- I

10   get that -- but you may be able to reach some sort of agreement

11   to tailor this.  There may be facts that you can present in a

12   more concrete way to me that would justify just vacating the

13   injunction entirely, or keeping it in place, because the

14   arguments for invalidity, while may be pursued as the

15   litigation continues, are not so strong that they defeat the

16   showing of a likelihood of success.

17          I don't have an answer on that based on what you're

18   saying this morning.  I understand what the points are.  But I

19   would need to see them in a little bit more concrete way.

20          MR. N. BAYRAMOGLU:  I think we are of the same mind

21   as far as especially the discovery issues, I mean, some of the

22   points that we've talked about and we assessed out.

23          So I think it may be prudent to have a briefing

24   schedule whereby we allow the defendants to redo their initial

25   brief.  Because what I'd hate -- I'd hate to do is have the

1    initial brief as it stands, and then our opposition, and then

2    in their reply, they are now introducing new things to rebut

3    what we have -- because we have been as forthcoming as we can

4    be.  As soon as they have appeared, we reached out to them

5    exactly the next day and given them what we've had to kind of

6    show:  Look, here's what we think are problems with your

7    motion.

8          And so instead of having a reply and then a surreply,

9    I think it would be best to have that so that we just set the

10    briefing schedule.  But also what we would like to do is prior

11    to having the briefing schedule set, we'd like to be able to

12    depose the declarant because of this bond issue.  If there is

13    going to be a significant increase in bond, we'd like to talk

14    to them exactly about their sales.

15          And it's not -- it's exactly in line with what the

16    Court's already issued as far as expedited discovery.  It would

17    just be instead of written discovery, to actually be able to

18    sit down and we can figure out the nuances of, do we go to Hong

19    Kong or Macao or do we do it electronically?

20          But we would like to at least have the opportunity to

21    have that testimony so that we can put it in -- we've already

22    asked for availability of the witness from opposing counsel.

23    He's working on that with his client.  We haven't heard back

24    yet.  But that is -- that would be important to us.

25          And in addition to that, just aside from the

1    discovery issue, as it relates to the preliminary injunction

2    itself, if there is going to be a modification -- and, of

3    course, we will put this into the briefs -- we would like to at

4    least maintain in place the asset freeze.

5          I've got a question for the Court about that later,

6    specifically about the order as it is now and as it relates to

7    other defendants, just to clarify for Amazon a small dispute

8    that we have.

9          But that is something that would be important.  So

10   that even if the Court finds:  You know, I don't think a

11   preliminary injunction is necessary here to stop the sales, we

12   think it would be prudent to freeze the assets so that the

13   assets are not taken overseas.  Because we've had, in similar

14   cases multiple times, something like this occur where the

15   defendants then just take everything, run away, and the

16   plaintiff is left empty-handed for the infringement.

17         THE COURT:  Well, I would just point out that asset

18   freezes are not supposed to preserve the ability to recover

19   damages.  Asset freezes are extraordinary in and of themselves,

20   and they're only there to preserve the equitable option of an

21   accounting.

22         But that's not the reason to freeze assets.  If you

23   want to freeze assets so that there's money available at the

24   end of the day for you to collect on, that's not a

25   justification for an asset freeze.

1      MR. N. BAYRAMOGLU:  Perhaps I misspoke.  I meant as

2  part of the equitable accounting, if the equities were balanced

3  and it was not equitable to have a stop of the sales, but it

4  was equitable to have the accounting, as you had previously

5  mentioned, I think that would be appropriate.

6      THE COURT:  Well, here's what I think we ought to do.

7  Discovery is -- I will say, discovery is open.  The parties may

8  pursue discovery of each other.

9      Do you have -- on behalf of the defendants, do you

10 have a deadline to answer the complaint?

11     MR. WANG:  We were not -- we have not been served

12 yet, according to plaintiff, so --

13     MR. N. BAYRAMOGLU:  Yeah, we --

14     MR. WANG:  We'll be ready to answer whenever, you

15 know, we are served.

16     MR. N. BAYRAMOGLU:  Yeah, we discussed this about two

17 days ago.  The defendant -- all of the defendants are on

18 notice, but they have not been formally served under Rule 4

19 with the summons.

20     So they have been served with the complaint, but it's

21 an incomplete service because of the lack of the summons.

22     But all defendants are on notice, and we'll work

23 through that.

24     THE COURT:  Are you having a summons issued?  And are

25 you serving that?

1    MR. N. BAYRAMOGLU:  I believe the summons was

2  provided to the Court -- a proposed summons was provided either

3  yesterday or the day before yesterday.  And as soon as it's

4  issued, we will be serving that on defendants.

5    THE COURT:  So for the time being, then, I will say

6  at least for the parties -- the defendants who have filed the

7  motion to vacate the preliminary injunction, plaintiff and

8  those defendants may pursue discovery of each other now,

9  without prejudice to defendants asserting any jurisdictional

10  defenses they may have to the case.

11    So by participating in discovery now, you're not

12  waiving any potential jurisdictional defenses you may wish to

13  assert, but you can conduct discovery now.

14    I do think the -- I understand your point about

15  having the briefs, maybe having the defendants re-file a more

16  fulsome brief.  I think the defendants have made their

17  arguments.  You know what they're talking about.  You can file

18  a response, and then they'll get a reply, and I'll see what the

19  case looks like then.

20    I was thinking I would give plaintiff about four

21  weeks to file a response, and you can endeavor to get whatever

22  discovery you can get done and then file a response brief by

23  then.

24    That would put you to March 23rd --

25    THE CLERK:  Yes.

1       THE COURT:  -- for a response brief.

2       How does that sound to plaintiff?

3       MR. N. BAYRAMOGLU:  I think it will depend entirely

4   on the availability of the witness.  I mean, if the witness is

5   available next week, then certainly we can do the deposition

6   next week.

7       I just wanted to clarify.  When Your Honor had

8   mentioned that discovery is open, would that be limited only to

9   the issues raised in the preliminary injunction or just

10  generally open?

11      THE COURT:  Let's keep it limited to the preliminary

12  injunction.

13      MR. N. BAYRAMOGLU:  Okay.

14      THE COURT:  Particularly because the defendants have

15  not filed an answer.  They're not totally at issue on all

16  fronts.

17      MR. N. BAYRAMOGLU:  That's what I had assumed.  I

18  just wanted to clarify.

19      THE COURT:  Well, I'll leave it as March 23rd as the

20  response date for plaintiff.

21      How much time would these defendants like to file a

22  reply?

23      MR. WANG:  Two weeks.

24      THE COURT:  Two weeks?

25      MR. WANG:  Yeah.

1    THE CLERK:  April 6th.

2    THE COURT:  So that would be April 6th.

3    In the interim, the preliminary injunction will

4    remain in place.  But I will -- as the briefs come in, I'll

5    take a look at things; and if I think I need to adjust that, I

6    will.

7    I am not going to set another date to see you or talk

8    to you.  And we may be able to do things over the phone going

9    forward to alleviate some of the travel costs on you.

10    You wanted to raise some questions about the

11    injunction itself and its implementation with Amazon?

12    MR. N. BAYRAMOGLU:  Yes.  I did have one question as

13    it relates -- and I believe this is paragraph 5 of the

14    preliminary injunction order itself.  And this is related to

15    the other defendants, what the intention was.  Because the

16    order, as it reads, says:  "Any third-party providers,

17    including PayPal, Alipay, Alibaba, Ant Financial, Wish.com, and

18    Amazon Pay, shall, within seven calendar days of receipt of

19    this Order:

20    "a. locate all accounts and funds connected to

21    Defendants' Seller Aliases, including, but not limited to, any

22    financial accounts connected to the information listed in

23    Schedule A, the e-mail addresses identified in the Exhibits,

24    and any e-mail addresses provided for" -- "by third parties;

25    and

1          "b. restrain and enjoin any such accounts or funds

2  from transferring or disposing of any money or other of

3  Defendants' assets until further ordered by this Court."

4          It's our position that this would relate to any funds

5  that are in the accounts that are held by any of these

6  institutions.  It is Amazon's position that this order would

7  apply only to the proceeds of funds that came from the

8  infringing products.

9          THE COURT:  That language is designed to implement

10  the asset freeze, which is all assets --

11          MR. N. BAYRAMOGLU:  All assets.

12          THE COURT:  -- of the defendants, but, again, as I

13  alluded to earlier, asset freezes are harsh, harsh things.  And

14  I think what happens in these cases, generally, is that the

15  plaintiffs' bar is working with Amazon and allowing things to

16  go ahead in a way that doesn't shut down defendants' businesses

17  entirely to avoid the potential litigation that may come if

18  Amazon starts showing up in these cases and objecting to these

19  asset freezes, and objecting to being named in these

20  injunctions as if they are acting in concert with infringers,

21  which they may not be in a way that they ought to be subject to

22  these kinds of preliminary injunctions.

23          So I think what tends to happen is, yes, this

24  language is broadly written, and it is an asset freeze -- and I

25  have ordered an asset freeze -- but some negotiation likely

1 happens behind the scenes that is avoiding presenting some

2 issues which might result in a court deciding:  I should not

3 have an asset freeze at all, and I am going to lift it.

4     MR. N. BAYRAMOGLU:  Okay.

5     THE COURT:  So the language says what it says, and it

6 does -- is intended to be an asset freeze for all assets --

7 that's what I have ordered -- but I would encourage you to

8 think about how hard you want to push on that front.

9     MR. N. BAYRAMOGLU:  I understand, Your Honor.  Thank

10 you.

11     MR. G. BAYRAMOGLU:  Your Honor, if I may?

12     We had been working very close with Amazon lawyers,

13 Your Honor, on this issue, so --

14     THE COURT:  I don't doubt it.

15   (Plaintiff's counsel laugh.)

16     MR. WANG:  Your Honor, may I just add?

17     THE COURT:  Sure.

18     MR. WANG:  With regard to the asset freeze, may I --

19 I understand the Court want to keep the TRO in place right now,

20 but may I request that for -- at least for defendant we

21 represent, that asset freeze be limited what is in the current

22 amount right now?  Because, again, my clients sell a lot of

23 shoes, and they sell other products as well, and it's causing

24 significant hardship on them for a TRO and PI, which we do not

25 believe be granted, so -- in the first place.

1      THE COURT:  I am open to it, but I would like you to

2   propose something a little bit more concrete.

3      So what I would suggest you do is confer with

4   plaintiff's counsel, see if you can't reach some sort of

5   agreement, and then you can submit something in writing with

6   me, either a motion to modify the asset freeze.  And you can

7   propose language that you'd like for that.  Maybe the plaintiff

8   will agree; maybe the plaintiff won't agree.  But I'd like to

9   tee that up separately so that I can parse exactly the kind of

10   language that you have in mind.

11      I worry that if I were to freestyle a modification of

12   the asset freeze, I would not be precise enough right now, and

13   it would likely interject more confusion in how to implement

14   it.  But I appreciate the point that there might be a way to

15   keep them in business, especially if there is an understanding,

16   an agreement that:  The sales of this accused product has been

17   enjoined, and you're not allowed to be selling the accused

18   product.  But you want to sell other products, and you need to

19   be in business to do that, and an asset freeze compromises

20   that.  There ought to be a way to shape the language to keep

21   that going forward.  But I'd like you to talk to each other

22   first.

23      MR. WANG:  Sure.  Yeah, we should do a stipulation,

24   if the parties can agree to that.

25      THE COURT:  So if you reach an agreement, you can

1    just file a stipulation or file a motion.

2              I will tell you, yes, I do need motions to be noticed

3    for presentment three business days in advance.  That generally

4    gives me time to take a look at it, and I might be able to say

5    you don't need to come.  And I would try to do that as quickly

6    as I can.

7              But let's follow those procedures going forward, and

8    I will do what I can do to keep costs down for everybody.

9              MR. N. BAYRAMOGLU:  Okay.

10             THE COURT:  So I've got this briefing schedule.  I am

11   not setting any other dates.  I'll see what gets filed, and

12   I'll set dates from there.

13             Is there anything else we should cover this morning

14   on behalf of plaintiff?

15             MR. N. BAYRAMOGLU:  We'll be open to having the

16   conversation.  I think, preliminarily, we would be a bit

17   opposed to that given the amounts that are frozen, I believe,

18   for all four defendants are in the neighborhood of about

19   $200,000, and they have admittedly sold at least 2, probably

20   closer to 5 million dollars.  So, I mean, it's not necessarily

21   an unreasonable freeze, but we'll have that conversation.

22             THE COURT:  Well, the concern is it's also a freeze

23   of all their ability to do business --

24             MR. N. BAYRAMOGLU:  Sure. -

25             THE COURT:  -- going forward --

1          MR. N. BAYRAMOGLU:  Sure.

2          THE COURT:  -- and that's something that they would

3     like to talk to you about.

4          MR. G. BAYRAMOGLU:  Your Honor, if I may?

5          The numbers we get from Amazon does not -- they don't

6     show anything close to 2 million or anything.  They are about

7     45,000, 50,000.

8          And we'll be happy to share that with opposing

9     counsel.  And we have been very upcoming with them and talking

10    all these things.

11         So we'll be happy to do that.  But numbers don't show

12    it, Your Honor.

13         THE COURT:  Well, again, I'll see it in the briefs as

14    you think about the bond amount.

15         MR. G. BAYRAMOGLU:  Sure.

16         THE COURT:  Is there anything else we should cover on

17    behalf of the defendants?

18         MR. WANG:  Not for defendants.

19         We'll work with plaintiff counsel as well.  Again, we

20    just got on board, like less than two weeks ago, so we are

21    investigating the matter as well.

22         Thank you, Your Honor.

23         THE COURT:  Okay.  Thank you for your time.

24         And, of course, now that you're all here, you can

25    continue your conversations outside.

1        MR. G. BAYRAMOGLU:  Yes, Your Honor.  Thank you.

2        MR. N. BAYRAMOGLU:  Thank you very much.

3        MR. WANG:  Thank you.  Thank you, Your Honor.

4        THE COURT:  Thank you.  We're in recess.

5   (Proceedings concluded.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1               C E R T I F I C A T E

2

3

4

5           I, Colleen M. Conway, do hereby certify that the

6   foregoing is a complete, true, and accurate transcript of the

7   Motion Hearing proceedings had in the above-entitled case

8   before the HONORABLE MANISH S. SHAH, one of the Judges of said

9   Court, at Chicago, Illinois, on February 23, 2023.

10

11

12       */s/ Colleen M. Conway, CSR, RMR, CRR*     *03/02/23*

13           Official Court Reporter            Date
            United States District Court
14          Northern District of Illinois
                Eastern Division
15

16

17

18

19

20

21

22

23

24

25